The next case for argument is DUCA No. 23-1582, Wireless Discovery v. Meet Group. Mr. Setti, please begin. Good morning, Your Honors. Nick Setti from Setti Chachkas, appearing on behalf of Plaintiff Appellant Wireless Discovery. Your Honors, in deciding that the 75 pending claims across four patents in this case were all unpatentable as a matter of law at the pleading stage without the benefit of any discovery, the District Court ignored the technical problems that these patents address and the specific technical improvements and solutions that they provide and claim. In so doing, the Court ignored teachings in cases like DDR, BASCOM, TXEC, which require a different type of analysis. To reach the District Court's result, it focused and perhaps even fixated on the notion that there was a single abstract idea, that of social networking or automating social networking, and did not focus at all on the technology that was, the technological problems being addressed. And specifically, if one looks at the claims that are asserted in the 352 and 397. What would you characterize as the technical problem being addressed? Your Honor, if you look at the claims that are asserted in the 352 and the 397 patents specifically, the technical problem is one in which if a device is off or offline and one does a query. Let me just see if I can paint the picture. Device number one is mine. I do a search for people that are in that area and in a normal traditional context without the inventions here, if Sally's device, let's just call it, is off, it would report a negative, meaning it would not report that that device was present. In contrast, with the claim technology in the 352 and 397 patents, device number one does a search. There's a computing device or server that sits in the middle. That server has registered device number one. It's created a profile for user number one. It's registered a unique hardware identifier for device number one. It does the same thing iteratively for all other devices, for Sally's device number two, and for the thousands of other devices that are out there. When one does a search, and let's say I'm in lower Manhattan, Sally's device is off. The traditional problem is that we would report a negative. With the technology that's claimed in the 352 and 397 patents, the device, even when off, still reports a positive, and that's because the profile and the database record that's evidenced in figure two of these patents, it will track a specific hardware address for that device. It will track the static location information for that device, meaning wherever Sally lives. It will track the dynamic location data for that device if it's been updated and available. So that means we have a technological problem, which is essentially not being able to report or track offline devices, and we have a technological solution that's specific to the claims of the 352 and the 397. Does this do it? It tracks the location of the mobile device that's off by looking at the person's home address or where they last had their device on? That's correct, Your Honor. The terminology in the claims is static or dynamic location data that's available for device number two. Now, the district court applied the 875. I'm sorry, Your Honor. I didn't hear you. I thought that this first appeal, your brief in this first appeal, focused predominantly on claim 10 of the 875 patent. I understand there's other claims at issue, but are you going to talk about that aspect as well? Your Honor, I think that if you look at the different errors that the district court committed, it did not consider the claim elements in combination as is required under BASCOM and DDR. It did not consider the- But I don't think you've answered my question. My question is when I look at your blue brief and I see what you've identified as a representative claim on the first page, you've got claim 10 of the 875 patent, and I'm simply asking whether you're going to present an argument on that claim as well. Your Honor, that's the claim that the district court chose as representative. And you chose because you've got it here in your brief, and you also have made arguments about it in your brief. Yes, Your Honor. Are you wrong? You're not incorrect that we defended the 875, the 267, the 352, and the 397. So you gave me your answer on your technological improvement with respect to the other claims, but what's your answer on the technological improvement with respect to claim 10 of the 875? Are you going to argue that today? Your Honor, I think that we're strongest on the claims of the 352 and the 397, and the reason is when we think of the combination of elements that does provide a concrete technological improvement- So where in your blue brief do you talk about these other two patents and the claims of these other two patents? Your Honor, there is discussion in the briefs about those claims. I'm looking right now. In all truth, Your Honor, the initial brief was directed towards the errors that the district court committed with respect to the 875 not being representative of the other claims. So you're just saying you argue in this brief that 875, claim 10, should not have been treated as representative, but you don't discuss the other claims. Your Honor, if you look at the district court's order, it goes through- Can you point us to a specific page in the blue brief where you discuss the other claims that you were just arguing to? Your Honor, the 352 patent is discussed at page 14 as an example, where the combination of elements that I just described is also described, and that has to do with the use of static or dynamic location data. Is that in the background section? Yes, Your Honor, that's in the background section. Where in your argument section do you address that claim? Your Honor, we're discussing the elements, not the individual patents, when we go through the analysis. So, for example, on page 26, when we're talking about unique hardware identifiers, that applies to all of the claims that were found to be unpatentable under section 101.  And do I understand correctly, I've got a technical question about that, do I understand correctly that the unique hardware identifier is often in the embodiments in this spec, the Bluetooth address of the device? No, Your Honor, there's a couple different examples given that- I just said is it one embodiment. Is that one embodiment? Maybe the embodiment that's mentioned several times. Like, for example, in column 10, line 6 through 8, column 8, lines 2 through 8? Yes, there's also reference to a universal mobile device identifier. There's another acronym for that. There are alternatives provided in the specifications for that. But the embodiment that discusses the Bluetooth discovery process is specifically described as not being limiting. If you look at the three- But it's an embodiment. I was just trying to understand, like, what the hardware identifier is and asking if in the specification is one embodiment of it a Bluetooth address. Yes, Your Honor. Okay, thank you. Yes, Your Honor. The unique hardware identifiers are used in the first instance to track each of the individual devices, okay? And the database record thus allows one to track devices that were off in a way that was not done in- Counsel, can you succinctly state for us what you contend is the alleged inventive concept that would save the asserted claims? Your Honor, if we use as a comparison the claims that this court found to be ineligible in NETSOC, the claims were directed to a method of social networking. Here we're talking about a specific technological improvement and the way I characterized it a moment ago in terms of being able to generate positive results for offline devices. That's a specific technological improvement. When taken in combination, we have the use of hardware identifiers that will identify device. We have the use of login credentials that will authenticate a particular user as a member of that network. We combine that with a server that is tracking within the profile static and dynamic location information. I'm not sure why it's an inventive concept if a user profile identifies the person by name, gender, maybe marital status and home address, and then all of that information gets sent over to some person potentially interested in connecting with that person. Why would the home address information be a technological invention? It's not just the addresses, Your Honor. It's the leveraging of the address. As this court wrote in BASCOM, where the technical address that was being leveraged or harnessed, in your words, Your Honor, allowed court's words. Yes, Your Honor. In that case, the harnessing of that address led to the individualized results that were superior because of the location of the ISP server. In this case, the harnessing of the address allows us to generate individualized results for me and locating Sally in my hypothetical, which otherwise would not be possible if we were not tracking the device address for Sally and reporting it as the static or permanent address or the available dynamic address. That's harnessing it and advancing the technology and solving a technical problem. Where is that addressed in your specification? Can you point to me where that's focused? In the 397 patent and in the 352 patent, it's discussed in multiple places. At the 352, when we're talking about the 397, it's in the claims and in the specification. Specifically, in the 397, it's included in Claim 1, Claim 3. What about the specification? I was asking about the specification. And again, I was focusing on Claim 10. I want you to know because that's what your brief focused on. Claim 10 of a different patent. 875 patent. Any chance you could take us to the spec, the 875 patent spec? Yes. You can answer the question posed. In the 875 specification, Your Honor. Oh, the 875 is not the one that has the device being off reported, which is why I'm focused on the 352 and the 397. Where are you focusing on this in your blue brief? Is it being the technological, maybe the step two inventive concept? Your Honor. It might be in your next appeal. It's in the reply brief extensively. And it is, as I described. But you agree you can't raise an argument for the first time on reply in the reply brief, right? No, Your Honor. But the leveraging of the hardware identifiers is specifically discussed in the blue brief. It is. But you say that the advantage of the hardware identifiers is being able to enable two mobile devices who might not use the same protocol to nonetheless communicate with one another through a server, right? That's right, Your Honor. And that's your alleged inventive concept that I see in the blue brief that you've presented to us. As to the 875, Your Honor, the connection of incompatible devices through the server is one of the advantages. I want to ask you a question about that. Now, in your blue brief on page 9, you say that figure 6 shows three devices from figure 5, each from a different manufacturer. But I looked at the spec, and I looked at the figures, and I don't see anywhere where it says that each device is from a different manufacturer. Am I wrong? I think there is, Your Honor. You're asking about the 875 specifically? I'm asking, yes, about the specific statement that you made in your blue brief on page 9. If you look at column 2, Your Honor, of the specification of the 875, lines 20 to 25, the invention provides a system and method that enables free discovery of others who also desire social interaction but without being constrained by hardware compatibility issues inherent in mobile devices by different manufacturers. But again, what you say is that you say figure 6 of the 875 pattern shows the three devices from figure 5, each from a different manufacturer, including, I mean, I'm trying to figure out. I understand the language of column 2. Maybe this is just one sentence. But where does the spec say figure 6 shows devices from different manufacturers? If you look at figure 6, it references multiple devices. If you go back one page on figure 4, it shows that those devices are from different manufacturers. One is identified as a BlackBerry. The other one is a flip phone. And the other one is a – it just says mobile phone. Okay. Thank you for that. Your Honor, recognizing that my time is up. Right. We'll try to give you some final time, okay? Thank you. Let's hear it from the other side. Your Honors, and may it please the Court. Doug Grady of Baker Hostetler, and I'm joined by Paul Breeny. I'm going to go right to the issue called out initially. There are three additional data processing steps that my friend on the other side suggests add something to the invention. But the simple truth is in 2007, which is the date that my friend acknowledges is the important date here, there are two concessions that Facebook was out and about. And, indeed, Facebook for Mobile was present in 2007. First, at oral argument, the trial court asked and Wireless Discovery conceded that Facebook was called out in the provisional application. Also, in the opening, in the blue brief, there was a discussion where Wireless Discovery concedes that Facebook introduced a rudimentary functionality called Facebook for Mobile. That's at docket 18, page 3. And with that in mind, I want to move straight to the three additional alleged data processing steps. One, hardware identification. Two, credentials-based authentication. And three, the layering of location data. And I humbly submit that in 2007, those three things were certainly present in Facebook and Facebook Mobile, at least. Right? So hardware identification is, did I log onto Facebook on my laptop or my desktop? I'm going to let you get into this, but I have to admit, I'm still, my mind is still back on the pivot that opposing counsel was doing to focus more on the 352 and 397 patents versus the 875 patent. Could you, up front, before you go into where you were going, just address that aspect? Our reading of the blue brief was the main focus was on the 875 there. Well, I'm in the unenviable position of, I think, clarifying this position. I think their view is that if the court had correctly found an exemplary claim that was not claim 10 of the 875 patent, and admitting they didn't do that, then they would have incorporated these three deliberate extra steps, these three additional data processing steps, which, had the court done that, would have given them the inventive step that they needed at Alice to. I don't think that that's called out particularly. What's your position? Well, our position is that all of this is, that NETSOC versus Match Group Incorporated is particularly perfectly on point across here. None of this is new. It's all abstract. And there's very little substantive hows articulated by opposing counsel as to why that case doesn't particularly apply here. So should we just be focused on the 875 patent? I feel like I'm a broken record. I don't mean to be. I just want to get a clear answer on this. Well, I'm in the unbendable position of, I believe what you're asking, and maybe perhaps I'm not hearing the question precisely, but the 875 claim 10 is the only one that's in play here. They do not, that patent and that particular claim, do not mention those three additional. This is the district court opinion where there was a representative claim chosen from each of the four patents, right? That's, well, if I understand the precise statement you just made, I think the court was trying to say, the court was choosing from across all four patents one claim. That's right. And they chose claim 10 of the 875. That's correct, Your Honor. Okay, but it wasn't just claim 10 of the 875 that the district court chose to evaluate. It also put into play one claim from each of the other three patents, right? Well, the point being, well. I just want a yes or no first. Yes. Okay, then. So there were four claims that were in play and were deemed to be representative of the entire basket of claims. No, I'm sorry. I'm not sure what I said yes to there. I apologize. When the court chose claim 10 of the 875 patent, it believed that across all four, that was the best one. That was the one that was most exemplary. It didn't also include claim 1 of the 352, claim 1 of the 267, and claim 1 of the 397 as representative. But look at page A70, A71, A72. The court's talking about L as step one and not just limiting its analysis to claim 10 of the 875. I'm sorry, Your Honor. Could you provide that to me? Could you look at page A70 of the record? Yes, Your Honor. Last paragraph. Yes. I would note, if you look at page A69, this is under the heading of L as step one. And then if you look at page A70 at the bottom, he starts talking about another claim, claim 1 of the 352, and talking about what it is directed to. And then on the next page, page 71, first full paragraph, he says claim 1 of the 267 patent and says what it's directed to. And then on the next page at A72, he says claim 1 of the 397 patent and says what it's directed to. So I think your answer to Judge Trent's question is yes, the district court did analyze not just claim 10 of the 875 patent. That is what I intended to say yes to, Your Honor. Yes. Okay, then. We do agree. It wasn't just one claim. It was four claims. Yes. I apologize. I appreciate now the question presented. And the answer is yes.  So then what I'm trying to figure out then is do we need to evaluate those four identified claims? These were, in fact, the four claims that your side identified as being representative. And then the district court agreed with you and then concluded that these four representative claims are no good under 101. Right. Well, and no matter how you look at it, the addition of those three claims, the three particular data processing steps that are called out by my friend, don't add anything new or inventive above and beyond. Can you answer Judge Trent's question, though, before you go into the spiel? I suppose one argument would be that, well, the appellant is the master of his own appeal. And the appellant, for whatever reason, chose to focus really just on one of those four representative claims that was litigated below. And that one claim is Claim 10 of the 875. That was the focus of their argument. And so for purposes of appeal, even if the district court considered four different claims, this appeal only needs to consider one claim, the 875's Claim 10. I would agree that that's one argument. Another argument would be that the different additions to the other three are not differences with a difference, or distinctions with differences, if you will. And so obviously we heard today a big focus on this location data element. Yes. So can you talk just about that? Sure. Location data has been used in social networking for a long time, at least as late as 2007, which is the date that they- Is there something in the specification that supports that, since we're looking at a decision on the pleadings? Well, I'm sorry. Well, let me see. So two places it's present is, first of all, the concession that- I'm sorry. The particular question presented is whether location data is called out as being in existence prior to 2007. Yeah, you were saying that location data is something that's been done for a long time. And I'm looking for some sort of admission to that effect would be helpful to know, given the procedural posture in which this case is presented to us. Right. So as a threshold matter, part of the problem that we're faced- And I'm going to put a pin in that answer, and I'd like to come back. But part of the problem we're faced with here, Your Honors, is that the profound forfeiture of all of these arguments. If you look at the appendix at 269, that's the first of seven pages that were offered in opposition to our 101 motion. And I mean that, and that's very particular. There are seven pages that were offered in opposition. Everything else after that paper that was filed by Wireless Discovery has come- have been arguments effectively contrived after that date. Be that an oral argument, or be that in the blue brief, or in reply. And that puts us in the unenviable position of sitting- I think that this is forfeiture in fact, in a way that's profoundly prejudicial. Now having said that, coming back to the question, whether it was called out particularly in the specification, I think it is- Can I ask you something? I hear what you're saying, but it seems to me that the district court considered those arguments. And notwithstanding the fact that they were presented for the first time in oral argument. And so the standard of review that I would apply to his decision that he doesn't see waiver, and that he's going to go ahead and consider those arguments, is an abuse of discretion. So, you know, you've got a situation where the district court, like in page 875, is acknowledging Wireless Discovery's arguments made as oral arguments. Yes, I appreciate that. He thought that was fine. I appreciate that. I do appreciate that they made arguments an oral argument that the court took under advisement. So, and considered, and addressed. Yes. That we should do. I do.  So let's just focus on the merits.  Perhaps I'll need a moment actually to look at the specification. I apologize. I don't have an answer. The discrete question asked, which as I heard it, is can you point to a place in the specification of the 875 patent where location data is called out as having existed prior to the filing date? To be honest with you, you're standing before me and saying it exists already. Isn't that as helpful as telling me where I can find that in the specification? I appreciate that. But I don't have a pinpoint site. I do know that in 2007, on Facebook. How do you know that? Well, again, had this been something that had been pending prior to oral argument, we would have called this out. But in 2007, everyone, Facebook Mobile was live and Facebook was live, and people were, anyone, including my client, eHarmony, a dating entity, everyone knew where they were. Everyone had to know where a unique user was because someone doesn't want to meet someone or date someone who is 5,000 miles away. Do you have another argument? I'm sorry? Do you have another argument besides that it's conventional? Well, above and beyond the fact that it's conventional, the fact is that all of those three additional data processing steps called out by my friend, none of them show anything particularly new other than the fact that they were there at the time. And that's sort of antithetical to American Axel and Manufacturing Inc., which requires that something new on top of the fact that it, on top of the simple recitation that it was present at the time and that it was another data processing step. I'd like to pause there, Your Honors. And I know, although it's untraditional, you've asked for a particular pinpoint site, and I'd like the opportunity to find that during the pendency of my friend's last few moments, if that's okay. That's really unorthodox. I mean, you have a colleague at the table, and that person should be able to do whatever you need to do. Okay. I'm sorry I don't do that. I would imagine that my colleague in the next brief will call that out. I'm sorry, in the next case will call that out with specificity. They're the case right behind ours. Do you have any other arguments you want to make? I don't. Other than those, I'll rest. And noting I have two minutes, unless Your Honors have any questions, I'll rest on those briefs. Thank you. Very good. Mr. Setti, you ran out of time, but we'll give you two minutes. Your Honors, I just want to clean up the perception that claims from not all of those four patents are at issue. Your Honor pointed out correctly that the district court found first in this appeal that the 875 Claim 10 was representative. Then the district judge compared that to three other claims and found that those additional steps or processes that are in the 352, the 267, and the 397 were immaterial. The reason he found that was that he had distilled or condensed those additional elements down to where they had no meaning. That distillation or boiling down was one of the reasons why there was error. As far as the briefing, you took issue as a group, I think, with the notion that we focused on that error in using the 875 Claim 10. But just to be clear, both of the blue briefs in this appeal and the next one do point out the additional contributions from the 352 patent at page 14 of each of the briefs. Both of them touch the additional contributions of the 397 patent at page 15 of those briefs. They then summarize at page 18 of each of the briefs all of those claims together, which are then analyzed in comparison with the purportedly representative claim. The problem we have is that the representative claim, whether you look at the 875 in this appeal or the 267 Claim 10 in the appeal coming up, gives no value to those additional technological improvements that I attempted to highlight. You all viewed that as a pivot. I want to just clarify that all of those arguments were preserved and they're in the blue briefs. But let's talk about why the district court's analysis was inappropriate. It doesn't take into account the combination of elements, as I described them, that lead to a different technological result. It doesn't take into account the, Your Honor, my rebuttal time. Okay. We'll see you soon.